IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JANET E. BYINGTON (KENNEDY),　　:

　　　　Plaintiff,　　　　　　　　:

v.　　　　　　　　　　　　　　　　:　　　Civil Action No. GLR-12-705

NBRS FINANCIAL BANK,　　　　　　:

　　　　Defendant.　　　　　　　　:

**<u>MEMORANDUM OPINION</u>**

　　　　Plaintiff, Janet E. Byington (Kennedy) ("Byington"), brings this action against Defendant NBRS Financial Bank ("NBRS"). The Complaint alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e <u>et seq.</u> (West 2012); the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 <u>et seq.</u> (West 2012); the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 <u>et seq.</u> (West 2012); and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 <u>et seq.</u> (West 2012); as well as intentional infliction of emotional distress, false light, and defamation. Now pending before the Court is NBRS' Motion for Partial Dismissal or, in the alternative, for Partial Summary Judgment ("Motion") (ECF No. 6). The issues have been fully briefed and no hearing is deemed necessary. <u>See</u> Local Rule 105.6 (D.Md.

2011).   For  the  reasons  stated  herein,  NBRS'  Motion  will  be
granted.

## I.   BACKGROUND[1]

NBRS  Financial  Bank  ("NBRS")  is  a  chartered  bank
incorporated  under  the  laws  of  the  State  of  Maryland,  with  its
principal  office  located  in  Rising  Sun,  Maryland.   From  January
1981  until  February  2009,  NBRS  employed  Byington  in  various
capacities.

During  her  tenure  at  NBRS,  Byington  concurrently  served  as
the  primary  caregiver  of  her  son,  Kevin  Hadwin,  who  was,  at  age
three  months,  diagnosed  with  cerebral  palsy  and  declared  blind.
Byington  served  as  primary  caregiver  to  Kevin  from  July  1984
until  his  passing  in  November  2010.   Despite  her  enormous
caregiving  responsibilities  at  home,  Byington  "steadily  rose  in
employment"  with  NBRS,  maintained  above  average  evaluations  for
twenty  years  while  employed  at  the  Rising  Sun  main  location,
received  annual  raises,  and  "was  entitled  to  the  most  paid  leave
of  any  employee"  in  NBRS.   (Compl. ¶ 4,  ECF  No. 2).

Despite  Byington's  continued  success,  however,  she  was
discharged  from  her  employment  at  NBRS  on  February  27,  2009,  for
allegedly  check-kiting.   Specifically,  Byington  "wrote  a  check
in  the  amount  of  $425.00  on  an  account  with  an  actual  balance  of

---

[1] Unless  otherwise  noted,  the  following  facts  are  taken  from
the  Complaint  and  viewed  in  a  light  most  favorable  to  Byington.

$0.13."   (Compl. ¶ 14).   Byington denies check-kiting, and instead contends that her termination was one of many incidents of intentional harassment and discrimination she incurred during her tenure at NBRS.[2]

On June 25, 2009, Byington filed a Charge of Discrimination ("administrative charge") with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on retaliation and disability.   (See Compl. Ex. 1, at 2). Byington's charge intimates that the check-kiting allegation was pretext for the real reasons for her discharge: her associative disability and retaliation.

Byington received a Right to Sue letter on December 7, 2011, and filed the pending action in the Circuit Court for Cecil County, Maryland on February 6, 2012.   On March 6, 2012, NBRS removed the action to this Court and filed the pending Motion.

In addition to the ADA claim presented in the EEOC charge, Byington's Complaint alleges violations of Title VII, the ADEA, the FMLA, intentional infliction of emotional distress, false

---

[2] Incidentally, Byington claims that she was simply taking advantage of "her lawful use of the Bank's published overdraft privilege." (Compl. ¶ 15).   Byington states that the Unemployment Insurance Appeals Board "noted that the overdraft privilege was an established customer policy of the bank" and awarded Byington unemployment benefits despite NBRS' motion to deny Byington those benefits on the basis of check-kiting. (Compl. ¶ 18).

light, and defamation.  Byington's Complaint references five specific incidents of alleged harassment and discrimination.[3]

First, Byington alleges the mistreatment began in 2001 when she was transferred from NBRS' branch in Rising Sun, Maryland to the Havre de Grace branch.  This transfer was "understood among employees of the Bank to be a sign of disfavor [and] an act routinely taken to encourage employees to leave employment at the Bank."  (Compl. ¶ 5).  Byington alleges that she was encouraged to quit because of her age and seniority, which made her more costly to NBRS in wages and benefits than a younger employee.

Second, in 2006, Byington applied for an assistant branch manager position, but was informed that the position had been eliminated in all locations.  Two customer service representatives, however, were subsequently promoted to the position in NBRS' Dublin and Bel Air branches.  Byington contends their promotions were an act of age discrimination because she was more qualified for the position.[4]  Byington

---

[3]  Byington makes additional generalized references to harsher evaluation standards and hostile working conditions beginning at the time of her transfer to Havre de Grace. (Compl. ¶¶ 5, 26, 40).
[4] Byington was responsible for training new managers and had more seniority, wages, and benefits due to her longevity with NBRS. Byington cites her additional responsibilities as further evidence of discrimination since they were not within the scope of her duties as a customer service representative and she was

claims that "NBRS intentionally engaged in a pattern of discrimination against [her] and others similarly situated when it created a hostile work environment for persons of greater seniority." (Compl. ¶ 28). Byington also contends that this incident violated her rights under the ADA based on her associative disability; namely, being the primary caregiver for her disabled son.

Third, Byington cites a November 2008 incident involving a NBRS accusation of "inappropriate communication of customer information with a former employee of the Bank." (Compl. ¶ 12). According to Byington, the matter was subsequently resolved because NBRS had no evidence that the alleged communication occurred. Byington further states that the accusation contributed to the overall hostile work environment intended to encourage her to quit.

Fourth, Byington claims that her rights under the FMLA and ADA were violated when she was disciplined for taking reasonable time off to care for her severely disabled son. In December 2008, NBRS management counseled Byington regarding her attendance during the period beginning August 8, 2008 through August 22, 2008. During that time, Byington took unpaid leave to care for her son pursuant to the FMLA and authorization by

---

never "compensated by title or wages for her added duties." (Compl. ¶ 9).

NBRS' head of human resources.   Byington claims that her manager
stated "[if she] worked elsewhere and missed [that] much time,
[Byington] would have been fired by now."   (Compl. ¶ 13).

Finally, Byington claims that NBRS discriminated against
her based on her age when "it articulated a false pretext for
terminating her employment, thus making it possible to employ
persons at lesser salaries, lesser paid leave, and other cost-
saving reasons."   (Compl. ¶ 27).   Byington also cites her
termination as a violation of her rights under the ADA and FMLA.

## II.   DISCUSSION

### A.   <u>Standard of Review</u>

NBRS has moved to partially dismiss Byington's Complaint
pursuant to Federal Rules of Civil Procedure 12(b)(1) and
12(b)(6) or, in the alternative, for partial summary judgment
pursuant to Rule 56.   Byington's discrimination claims will be
addressed pursuant to Rule 12(b)(1); the tort claims, pursuant
to Rule 12(b)(6).

A motion to dismiss for lack of subject matter jurisdiction
is governed by Rule 12(b)(1).   The plaintiff bears the burden of
proving that subject matter jurisdiction properly exists in the
federal court.   See <u>Evans v. B.F. Perkins Co., a Div. of Standex
Int'l Corp</u>., 166 F.3d 642, 647 (4th Cir. 1999).   In a 12(b)(1)
motion, the court "may consider evidence outside the pleadings"
to help determine whether it has jurisdiction over the case

6

before it.  Richmond, Fredericksburg & Potomac R.R. Co. v. U.S., 945 F.2d 765, 768 (4th Cir. 1991); see also Evans, 166 F.3d at 647.  The court should grant a 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, 945 F.2d at 768.

Conversely, a motion to dismiss for failure to state a claim is governed by Rule 12(b)(6).  Under Rule 12(d), however, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d).  Although the parties have presented matters outside of the pleadings, the Court does not rely upon them in deciding the tort claims. NBRS' Motion is, therefore, not converted into one for summary judgment.

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)).

When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. U.S., 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." Id. (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]'—'that the

pleader is entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)).

**B.   Analysis**

NBRS has moved for partial dismissal on four grounds. First, NBRS avers that Byington failed to exhaust administrative remedies with respect to her Title VII,[5] ADEA, pre-August 2008 ADA intentional discrimination, and ADA hostile work environment claims.   Second, NBRS contends that Byington failed to state a claim for hostile work environment under the ADA.   Third, NBRS argues that Byington failed to state causes of action for intentional infliction of emotional distress, false light, and defamation.   Finally, NBRS asserts that Byington's defamation claim is time-barred.   Byington's oppositional arguments will be discussed throughout this section.   For the reasons stated herein, NBRS' Motion will be granted in its entirety. Therefore, the only claims remaining in this action are Byington's ADA intentional discrimination claims that span August 2008 through February 2009 and the FMLA claim.

---

[5] Although Byington claims to bring suit pursuant to Title VII, the Complaint contains no allegation of discrimination based on race, gender, religion, nationality, or retaliation. Furthermore, NBRS identifies Byington's omission in its Motion, but nonetheless moves to "dismiss all potential Title VII claims." (Def.'s Mot. at 2 n.1).   This Memorandum Opinion, however, will not address Title VII as it is not properly before the Court.

1.    **Failure to Exhaust Administrative Remedies**

NBRS' contention that Byington failed to acquire full administrative exhaustion hinges upon the question of whether Byington's ADEA, pre-August 2008 ADA intentional discrimination, and ADA hostile work environment claims exceed the scope of the administrative charge. The Court finds that they do. Therefore, Byington's ADEA, pre-August 2008 ADA intentional discrimination, and ADA hostile work environment claims will be dismissed for lack of subject matter jurisdiction.

Before filing a discrimination suit alleging violations of the ADEA or ADA, an individual must file a charge of discrimination with the EEOC, pursuant to the same powers, procedures, and remedies applied to Title VII claims. See 29 U.S.C. § 626(d) (West 2012) (ADEA); 42 U.S.C. § 12117(a) (West 2012) (ADA). Therefore, "[a]n individual cannot bring suit [under the ADEA or ADA] until he has exhausted [the] administrative process." Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005) (citations omitted). The primary purpose of engaging in the administrative process is to notify the employer of the alleged discrimination and give it "a[n] initial opportunity to voluntarily and independently investigate and resolve the alleged discriminatory actions." Chacko, 429 F.3d at 510. This opportunity aligns itself with the congressional purpose of the exhaustion requirement, which

includes encouraging "quicker, less formal, and less expensive resolution[s] of disputes." Id.

The scope of the federal suit, however, is determined by, and limited to, the contents of the administrative charge. Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009). Limiting federal suits in this way ensures that the underlying purpose of the administrative process is upheld. Swift v. Montgomery Cnty. Pub. Schs., No. DKC-99-2171, 2001 WL 650710, at *8 (D.Md. June 5, 2001).

To determine whether a suit exceeds the scope of the administrative charge, the Court considers whether the Complaint contains "those discrimination claims stated in the initial charge, those reasonably related to [that charge], and those developed by reasonable investigation [of that charge]." Thorn v. Sebelius, 766 F.Supp.2d 585, 596 (D.Md. 2011) (quoting Jones, 551 F.3d at 300). Moreover, discrete discriminatory acts may not be considered by the Court if they occur outside of the 300-day limitations period. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002).

   a.   ADEA (Count I)

NBRS avers that Byington's ADEA claim exceeds the scope of the administrative charge because the charge explicitly references disability and retaliation as the sole discriminatory bases. Moreover, NBRS argues that the age box was not checked

on the charge and that the narrative section neither makes any reference, nor is it reasonably related, to an age discrimination claim. According to NBRS, the age discrimination claim would not have been developed by a reasonable investigation of the charge.

Byington counters that the ADEA claim raised in the Complaint is reasonably related to the claims in the administrative charge because the claims arise out of the same set of facts and circumstances. According to Byington, the EEOC would have identified this claim upon a comprehensive investigation. Byington argues that, because of this relatedness, NBRS was on notice regarding the ADEA claim. Byington alternatively argues that, pursuant to the identity of interest exception, her EEOC charge should receive wider latitude because she filed pro se.[6]

Byington's arguments are unpersuasive. As a preliminary matter, the fact that Byington filed the administrative charge pro se does not automatically extend Byington the benefit of a

---

[6] Byington references <u>Manzi v. DiCarlo</u>, 62 F.Supp.2d 780 (E.D.N.Y. 1999), to support this argument. The identity of interest exception, however, permits a plaintiff to join defendants not previously named in the administrative charge; it does not specifically permit the joinder of new claims. <u>Id.</u> at 787. Moreover, NBRS asks that this Court reject Byington's contention that she filed the charge pro se because Byington failed to submit an affidavit detailing the particulars of her representation. (<u>See</u> Def.'s Reply to Pl.'s Opp'n at 4.) The Court, however, will assume without concluding that Byington was unrepresented when she filed her administrative charge.

broad interpretation of the charge because "laypersons, rather than lawyers, are expected to initiate the [administrative] process." Syndor v. Fairfax Cnty., Va., 681 F.3d 591, 594 (4th Cir. 2012) (citation omitted).   Being pro se, therefore, does not absolve Byington of the responsibility of ensuring that each claim is articulated in the charge.   Rather, the primary effect a pro se filing has on the administrative charge is to remove strict adherence to the charge and replace it with an inquiry into reasonable relatedness and investigation.   Id.   This inquiry ensures that "plaintiffs are not tripped up over technicalities" while honoring the notice requirement inherent in the administrative process.   Id.

Byington, however, failed to satisfy the exhaustion requirement as it relates to her ADEA claim because it exceeds the scope of the administrative charge.   A "plaintiff's claim will generally be barred if [her] charge alleges discrimination on one basis — such as race — and [she] introduces another basis in formal litigation — such as sex." Chacko, 429 F.3d at 509; see also Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132-33 (4th Cir. 2002) (finding no exhaustion where the charge alleged racial discrimination, but the complaint included sex discrimination); Jones, 551 F.3d at 301 (finding no exhaustion where the charge alleged retaliation, but the complaint included racial discrimination).   Moreover, the United States Court of

Appeals for the Fourth Circuit ("Fourth Circuit") has previously held that a discrimination suit may be dismissed if the appropriate box is not checked in the administrative charge. Jones, 551 F.3d at 301; see also Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996).

In the case sub judice, Byington's administrative charge references discrimination based on her associative disability and retaliation. (See Compl. Ex. 1). Byington did not check the box for discrimination based on age, and there is no reference to age discrimination in the narrative portion of the document.[7] (See Compl. Ex. 1, at 2). Despite this omission, Byington erroneously raises an ADEA claim in her Complaint. (See Compl. ¶¶ 24-37). The inclusion of the ADEA claim mirrors the actions barred by Chacko, Bryant, and Jones because this discriminatory basis completely differs from the disability and retaliation bases indicated in the administrative charge.

---

[7] Moreover, Byington's August 28, 2010 letter drafted by counsel (Pl.'s Opp'n to Def.'s Mot. Ex. 2, ECF No. 10-3 ["Pl.s Opp'n"]; Def.'s Reply to Pl.'s Opp'n Ex. 2, at ¶ 8, ECF No. 11-2) does not constitute an amendment to the administrative charge. See, e.g., Sloop v. Mem'l Mission Hosp., Inc., 198 F.3d 147, 149 (4th Cir. 1999) (citation omitted) ("[I]t would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge, given that one of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it.").

Accordingly, Byington failed to achieve full administrative exhaustion on the ADEA claim, and it is, therefore, dismissed for lack of subject matter jurisdiction.

b.    ADA (Count II)

NBRS argues that Byington's pre-August 2008 ADA intentional discrimination claims are time-barred and that the ADA hostile work environment claim exceeds the scope of the administrative charge.  Byington failed to respond to NBRS' first argument, but she renews her pro se argument and further argues that a "comprehensive and muscular" investigation would have fully developed the hostile work environment claim.  (Pl.'s Opp'n at 5).  Byington also argues that it would be prejudicial to adjudicate the allegations of a hostile work environment before a period of discovery because the claim's label is merely a "characterization" of the facts, whose accuracy is dependent upon discovery.  (Id.)

Byington's ADA claim can be separated into three groups: (1) intentional discrimination that pre-dates August 2008; (2) intentional discrimination that occurred between August 2008 and February 2009; and (3) hostile work environment.  The only ADA allegation Byington may pursue is for the intentional discrimination that allegedly occurred between August 2008 and February 2009. The others will be dismissed for lack of subject matter jurisdiction.

15

At the outset, all claims of intentional discrimination that allegedly occurred prior to August 2008 are dismissed because they constitute discrete acts that occurred more than 300 days before Byington filed the administrative charge in June 2009. See 42 U.S.C. § 2000e-5(1); Nat'l R.R. Passenger Corp., 536 U.S. at 105 ("We hold that the statute precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period."). Byington's ADA intentional discrimination claims relate back to 2000 and include, inter alia, her transfer to NBRS' Havre de Grace branch and the denial of an assistant branch manager position. (See Compl. ¶¶ 5, 8, 12-13). To be considered, however, the intentional discrimination must not have occurred prior to August 2008. The ADA intentional discrimination claims that pre-date August 2008 are, therefore, dismissed.

Conversely, Byington's hostile work environment allegation is not precluded by the 300-day limitations period. See Nat'l R.R. Passenger Corp., 536 U.S. at 122 ("A charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."). This claim, however, fails to reach full administrative exhaustion because "the factual foundation in the administrative charge is too vague to support" the

hostile work environment claim raised in the Complaint.  Chacko, 429 F.3d at 509 (citation omitted).

The administrative charge specifically states that after Byington was accused of using too much leave during the December 10, 2008 meeting, she "*began* to be subjected to harassment with regards to taking care of [her] son." (Compl. Ex. 1, at 2) (emphasis added).  Byington further alleges she "was subjected to unequal terms and conditions of employment and harassment due to disability." (Id.)

Byington's generalized allegation of "harassment" in the administrative charge is void of the specifics necessary to put NBRS on notice that its work environment was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [Byington's] employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).  First, Byington alleged that the harassment did not begin until December 2008 and the "continuing action" box was not checked. (See Compl. Ex. 1).  Byington also failed to indicate the frequency of the allegedly harassing conduct.  Second, the charge fails to identify specific actors.  At the very least Byington, even filing pro se, could have informed the investigative agency of whether the perpetrators were managers,

co-workers, or any other individual.  Finally, the nature of the discriminatory conduct (or harassment) was not specified.

Accordingly, Byington's ADA hostile work environment claim is dismissed for lack of subject matter jurisdiction.[8]

### 2. Failure to State Plausible IIED, False Light, and Defamation Claims

NBRS argues that Byington failed to state causes of action for intentional infliction of emotional distress, false light, and defamation.  The Court will consider each tort claim *seriatim*.

### a. Intentional Infliction of Emotional Distress (Count IV)

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must show four elements:  (1) intentional or reckless conduct; (2) extreme and outrageous conduct; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress. Harris v. Jones, 380 A.2d 611, 614 (Md. 1977); Arbabi v. Fred Meyers, Inc., 205 F.Supp.2d 462, 466 (D.Md. 2002).  In Maryland, however, IIED claims are "rarely viable" and, thus, subject to a heightened pleading standard.  Bagwell v. Peninsula Reg'l Med. Ctr., 665 A.2d 297, 319 (Md.Ct.Spec.App. 1995); see also Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby, 607 A.2d

---

[8] The Court need not address NBRS' argument that Byington failed to state an ADA hostile work environment claim because the claim is dismissed on this ground.

8, 11 (Md. 1992) ("<u>Weathersby II</u>") ("[T]he tort is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct.").

NBRS argues that Byington failed to sufficiently allege the extreme and outrageous element of the tort.   Extreme and outrageous conduct constitutes behavior that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."   <u>Harris</u>, 380 A.2d at 614 (citation omitted).   Byington's allegations of extreme and outrageous conduct involve being denied the assistant branch manager position, differential policy enforcement, unfavorable transfers, subjugation to harsher evaluation standards, and a false accusation of check kiting, among other things.   (<u>See</u> Compl. ¶¶ 61-65).   Furthermore, through the use of Greek mythology and colorful adjectives, Byington argues that, as an employer, NBRS was in a unique position to harass and intimidate her.   (<u>See</u> Pl.'s Opp'n ¶¶ 14-18).   Byington also argues that NBRS acted with knowledge that "if they hurt her economically they would be hurting her son, too . . . ."   (<u>Id.</u> ¶ 15).

As a preliminary matter, NBRS' knowledge of Byington's emotional susceptibility is not indicated on the face of the Complaint.   Even if knowledge were asserted, however, it would not be dispositive on this issue.   <u>See</u> <u>Weathersby II</u>, 607 A.2d

at 14 ("Although it is a factor in evaluating a defendant's conduct, the mere fact that a defendant knew that a plaintiff was susceptible . . . does not require a finding that the defendant's conduct was outrageous."). Moreover, although the employment relationship is a factor in this analysis, it does not lower the heightened pleading standard. Id. at 15.

Here, Byington may have alleged a disagreeable work environment, but she fails to present any conduct that would plausibly rise to the level of outrageousness required to sufficiently state an IIED claim.

Accordingly, Count IV is dismissed for failure to state a claim upon which relief may be granted.

　　　　b. False Light (Count V)

To succeed on a false light claim, the plaintiff must show three elements: (1) defendant gave publicity to a matter concerning the plaintiff that placed her before the public in a false light; (2) the false light would be highly offensive to a reasonable person; and (3) defendant acted with knowledge of or reckless disregard for the falsity of the publicized matter and the false light in which the plaintiff would be placed. Campbell v. Lyon, 26 F.App'x 183, 188 (4th Cir. 2001) (quoting Bagwell, 665 A.2d at 318). The parties disagree over the nature of the publicity required in the first element.

False light publicity requires the matter to be disclosed beyond the purview of a single individual or small group of persons.   <u>See</u>   <u>Furman v. Sheppard</u>, 744 A.2d 583, 588 (Md.Ct.Spec.App. 2000) ("It is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.") (citation omitted); <u>Henderson v. Claire's Stores, Inc.</u>, 607 F.Supp.2d 725, 733 (D.Md. 2009) ("Concomitantly, it is not an invasion of privacy to communicate a fact about someone's private life to a single person or even to a small group of people.") (citation omitted).

Here, Byington alleges that NBRS falsely accused her of check kiting and that, as a result of the false accusation, Byington has to publish the incident each time she completes an employment application.  (<u>See</u> Compl. ¶¶ 71-76).  Byington's "publication," however, does not reach the level of publicity required to state a plausible false light claim because she only communicated this information to a small group of potential employers.

Accordingly, Count V is dismissed for failure to state a claim upon which relief may be granted.

       c.   <u>Defamation (Count VI)</u>

To state a claim for defamation under Maryland law, a plaintiff must show:  (1) the defendant made a defamatory

communication to a third party; (2) the communication was false;
(3) defendant intended to communicate a false statement; and (4)
plaintiff suffered damages.  Carter v. Morgan, 34 F.App'x 427,
428 (4th Cir. 2002) (citing Gohari v. Darvish, 767 A.2d 321, 327
(Md. 2001)).  Similar to the false light claim, the parties
disagree on the publication element of this tort.  Specifically,
the question is whether the theory of compelled "self-
publication" is recognized in Maryland and, thus, sufficient to
satisfy the first element of a defamation claim.

The theory of self-publication involves a forced
communication to a third party by the plaintiff, which defames
her.  Here, the forced self-publication is Byington's obligation
to disclose the basis of her termination on employment
applications.  The case law is clear that the Maryland state
courts have been silent on this issue.  See Bagwell, 665 A.2d at
318 n.10 ("According to appellant, although this emerging
doctrine has not been considered by any Maryland court, it has
been accepted by ten states.  We decline to reach this issue, as
it was not raised below.").  Despite the Maryland courts'
silence, in De Leon v. Saint Joseph Hosp., Inc., the Fourth
Circuit concluded that the "Maryland Court of Appeals, at least
on the facts presented [in the case], would not adopt [the]
self-publication [theory]."  871 F.2d 1229, 1237 (4th Cir.
1989).

De Leon, decided prior to Bagwell, is factually analogous to the present case.   Specifically, the De Leon defendant had not published the allegedly defamatory material to a third party, but the plaintiff, Mr. De Leon, argued that he would be forced to reveal said material when applying for other positions, resulting in a "compelled 'self-publication.'"   Id. (citation omitted).   The Fourth Circuit affirmed the district court's conclusion that the Maryland courts would not adopt the self-publication theory.

Byington utilizes case law outside of this circuit to argue that the theory of self-publication has evolved since De Leon and is currently accepted.   (See Pl.'s Opp'n ¶¶ 23-24).   The Court declines to adopt this position for several reasons. First, although De Leon was decided in 1989, the case interprets Maryland law.   Moreover, De Leon is factually analogous to Byington's case.   Finally, since De Leon was decided, the Maryland courts have been silent on this issue.   De Leon is, therefore, the only controlling precedent before the Court at this time.

Accordingly, Count VI is dismissed for failure to state a claim upon which relief may be granted.[9]

---

[9] In light of this decision, the Court will not address NBRS' defamation statute of limitations argument.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS NBRS' Motion. (ECF No. 6).   Counts I (ADEA), IV (IIED), V (false light), VI (defamation), and partially II (ADA) are dismissed.

The portion of Count II that covers August 2008 through February 2009 and Count III (FMLA) will proceed to discovery.   A separate Order and Preliminary Scheduling Order will issue.

Entered this 10th day of October, 2012

                                        /s/
                                 _____
                                 George L. Russell, III
                                 United States District Judge